# EXHIBIT A

## Business Record Details »

Minnesota Business Name
### Vireo Health of Minnesota, LLC

**Business Type**
Limited Liability Company (Domestic)

**MN Statute**
322C

**File Number**
625651900041

**Home Jurisdiction**
Minnesota

**Filing Date**
11/2/2012

**Status**
Active / In Good Standing

**Renewal Due Date**
12/31/2025

**Registered Office Address**
1010 Dale St N
Saint Paul, MN 55117–5603
USA

**Registered Agent(s)**
C T Corporation System Inc

**Manager**
Amber Shimpa
207 South Ninth Street
Minneapolis, MN 55402
United States

**Principal Executive Office Address**
207 South Ninth Street
Minneapolis, MN 55402
United States

Filing History

# Filing History

Select the item(s) you would like to order:   Order Selected Copies

| | Filing Date | Filing | Effective Date |
|---|---|---|---|
| ☐ | 11/2/2012 | Original Filing - Limited Liability Company (Domestic) (Business Name: Executive Health Network LLC) | |

STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF HENNEPIN                     FOURTH JUDICIAL DISTRICT

---

Upasna Sant,                          Court File No. _____

                                      Judge: _____
                Plaintiff,

                                      Case type: Employment

v.

Vireo Health, Inc. and
Vireo Health of Minnesota, LLC,              **SUMMONS**

                Defendants.

---

## TO THE ABOVE-NAMED DEFENDANT(S):

1.  **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2.  **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

    Daniel Gray Leland
    LELAND CONNERS PLC
    60 South Sixth Street, Suite 2800
    Minneapolis, MN 55402
    (612) 255-2255
    dan@lelandconners.com

3.  **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer, you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.  **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the

1

Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: March 21, 2025

*/s/ Daniel Gray Leland*

Daniel Gray Leland (#389027)
Ryan T. Conners (#3895313)
LELAND CONNERS PLC
60 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 255-2255
dan@lelandconners.com
ryan@lelandconners.com

**Attorneys for Plaintiff**

2

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Upasna Sant,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Vireo Health, Inc. and<br>Vireo Health of Minnesota, LLC,<br><br>　　　　　Defendants. | Court File No. _____<br>　　　　Judge: _____<br><br>Case type: Employment<br><br>**COMPLAINT AND<br>JURY DEMAND** |

The Plaintiff, Upasna Sant ("Plaintiff"), for her Complaint against Defendants, states and alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff is a natural person who resides in the County of Hennepin, State of Minnesota.

2. Defendant Vireo Health of Minnesota, LLC is a Minnesota corporation licensed to do business in Minnesota and located in the County of Hennepin, State of Minnesota.

3. Defendant Vireo Health, Inc. is a foreign limited liability corporation licensed to do business in Minnesota and located in the City of Minneapolis, County of Hennepin, State of Minnesota.

4. Defendants' principal executive office address is located at 207 South Ninth Street, Minneapolis, MN 55402.

5. At all times relevant to this action, Plaintiff and Defendants were "employee" and "employer," respectively, within the meaning of Minn. Stat. § 363A.01 *et seq.*

1

6.      At all times relevant to this action, Plaintiff and Defendants were "employee" and "employer," respectively, within the meaning of 42 U.S.C. § 1211.

7.      At all times relevant to this action, Plaintiff and Defendants were "employee" and "person," respectively, within the meaning of Minnesota Statutes § 176.82.

8.      The acts alleged in this Complaint fall within the general subject matter jurisdiction of this Court.

9.      Jurisdiction and venue are proper in the County of Hennepin, State of Minnesota because Defendants conduct business in, and the unlawful actions alleged in this complaint occurred in the County of Hennepin, State of Minnesota.

## FACTS

10.     Plaintiff is disabled.

11.     Plaintiff has extensive injuries in her left ankle and knee.

12.     As a result, Plaintiff suffers from chronic pain, limited mobility, and walks with the assistance of a cane.

13.     Defendants are a medical cannabis company that provide medical cannabis products via dispensaries to individuals on the Minnesota medical cannabis registry.

14.     Plaintiff began her employment with Defendants in 2018.

15.     Plaintiff was hired as a Patient Care Coordinator ("PCC") at Defendants' downtown Minneapolis dispensary.

16.     At the time of hire, Plaintiff had multiple conversations with Defendants' hiring manager and Director of Dispensaries, Cindy Dikmen ("Dikmen") about her physical limitations and need for accommodation.

2

17.    Dikmen assured Plaintiff that she would be allowed to have a chair to sit in at all times.

18.    At the time of her hire, all of Defendants' PCC positions at the Minneapolis dispensary were, by default, seated positions.

19.    Plaintiff was passionate about and dedicated to her employment.

20.    In late 2021 and early 2022, during the COVID-19 pandemic, Defendants rearranged and modified the Minneapolis location to require significantly more movement of PCCs.

21.    These rearrangements did not account for the needs of Defendants' disabled staff and disabled patients.

22.    During this rearrangement Plaintiff provided Ana Galvin ("Galvin"), Human Resources Representative, extensive details about her disability and a letter from her orthopedic surgeon about her needed accommodations.

23.    Despite the request for accommodation, Defendants removed Plaintiff's chair and required her to use a raised high-top chair.

24.    Defendants have multiple positions in its dispensaries, designated as PCC1 – PCC4.

25.    Due to the rearrangement of the dispensary and limitations stemming from Plaintiff's disability, and the removal of Plaintiff's chair, she was only able to staff PCC1 positions due to the lack of accommodation.

26.    On or around April 27, 2021, Plaintiff was contacted by Galvin, inquiring about accommodations for her disability.

27.    The following day Defendants implemented a "no chair" policy, despite Plaintiff requiring a chair due to her disability.

3

28. It was announced that Defendants were implementing standing only workstations at the Minneapolis location.

29. On or around April 29, 2021, Union President Jennifer Christensen ("Christensen") sent a formal objection to Defendants' executive team regarding the sudden removal of Plaintiff's chair.

30. On or around May 3, 2021, Plaintiff submitted a letter from her orthopedic surgeon to Galvin, explaining she required a place to be seated.

31. On or around May 6, 2021, Defendants granted Plaintiff's accommodation/need for an ADA compliant chair.

32. On or around December 10, 2021, Defendants sent an email defending the "no chair" policy to employees.

33. On or around December 13, 2021, Human Resources asked Brittany Fink ("Fink"), Minneapolis Dispensary Manager, if anyone in the Minneapolis dispensary required accommodation. Fink asked Plaintiff if she had accommodations and Plaintiff had to remind her that, yes, she did; the ability to sit in a regular counter height chair.

34. Shortly thereafter the chair Plaintiff had been consistently using was suddenly removed. The only option offered to Plaintiff was a raised chair in a different location with a raised counter.

35. Plaintiff reported to Fink her dismay that she could no longer perform her duties from a seated position.

36. On or around December 14, 2021, management communicated to Plaintiff that the only "accommodation" it would provide was for her to sit at a raised chair. This required Plaintiff to hop on and off a high-top chair that aggravated her disability and exacerbated her chronic pain.

4

37.    Plaintiff and her Union had numerous communications with Defendants over the early months of 2022, seeking an accommodation—often waiting lengthy amounts of time between responses.

38.    On or around January 2, 2022, Plaintiff emailed Fink requesting that she be provided a regular chair and that changes had been made to the dispensary without taking ADA accommodations for disabled employees into consideration.

39.    In early 2022, a full-time role was filled in Minneapolis without any prior notice of a full-time opening.

40.    Despite her exemplary performance record, Plaintiff was not advised about the position opening and did not have the chance to apply for the position for which she would have applied.

41.    On or around January 5, 2022, Claire Vandeberg ("Vandeberg"), Union Representative, filed a formal grievance against Defendants in response to Defendants' no-chair policy.

42.    From January 6–13, 2022, Plaintiff engaged in communications with Human Resources and Cindy Huph ("Huph"), Defendants' Director of Dispensaries, requesting to have her chair put back at the workstation that complied with her restrictions due to the pain from hopping on and off the high-top chair multiple times per day.

43.    After waiting a month, Plaintiff's workstation was set back up in the seated area of the dispensary.

44.    Despite Plaintiff regularly expressing her desire for a full-time role, a PCC from Defendants' Bloomington location was brought into the Minneapolis dispensary. Plaintiff was not made aware of the full-time role or otherwise given the opportunity to apply.

5

45.     Defendants rearranged merchandise and product at the Minneapolis dispensary which moved items into areas that were inaccessible to Plaintiff because of her physical limitation.

46.     On or around February 9, 2022, Plaintiff sustained an injury at work while attempting to access product in a new cabinet location that had not been properly secured.

47.     On or around February 14, 2022, Plaintiff informed Jake Burton ("Burton"), Environmental Health and Safety Advisor about the cabinet safety, explaining the product in the cabinets were inaccessible from her chair.  HR Director Tim Blum ("Blum") was included in the conversation as he was aware of the accommodation Plaintiff had on file.

48.     On or around February 22, 2022, Plaintiff requested an on-site accessibility meeting via email to Burton and Blum.

49.     This request was ignored.

50.     On or around February 25, 2022, PCCs received an update regarding chair accommodations which indicated that Defendants were trying to negotiate employee ADA compliance with the union. Defendants would only accommodate employees that needed a chair via a doctor's note on the condition that the Union dropped the grievance.

51.     March 2, 2022, was one the busiest days of ever during Plaintiff's employment because the dispensary had just launched cannabis flower products.

52.     On or around March 2, 2022, Huph confronted and harassed Plaintiff because she had placed bags of product on a countertop that she was able to access with her restrictions. This allowed Plaintiff to not be required to bend over and risk another fall.

53.     Huph told Plaintiff that due to the "aesthetics" and "rebrand" of the dispensary, Defendants didn't want anything on the counter and didn't want PCCs to sit, despite Plaintiff's needed accommodation.

6

54.   Huph loudly verbally attacked Plaintiff which was observed, and documented, by co-workers and patients.

55.   Following the incident with Huph, Plaintiff sent an email to executive management on March 7, 2022, explaining what had transpired and informing them that Vandeberg would be filing a grievance based on Article 23 of the union contract – no discrimination.

56.   On or around March 20, 2022, Plaintiff met via telephone with her union representative, Blum, and Senior HR Business Parter Margie Curtis ("Curtis.")

57.   In this meeting, Defendants agreed to explore possible solutions to accommodate Plaintiff. Plaintiff was told she would be working in a PCC1 role only until they could come to a resolution. Plaintiff asked for assurance she would not lose hours due to being shifted exclusively into a PCC1 role.

58.   Following the meeting, Plaintiff made a formal request in writing that she be given full-time hours.

59.   On or around March 22, 2022, Plaintiff had a virtual meeting with Defendants' Attorney Michael Schroeder ("Schroeder"), Blum, and Vandeberg to discuss accommodations, hours, and the incident with Huph and the discrimination that occurred on March 2, 2022.

60.   During this meeting, concern was expressed that dispensary security was working in the PCC role (a union contract violation) and that Plaintiff was not being scheduled hours she was available for. Instead, less senior individuals were being scheduled for those hours over Plaintiff. Plaintiff provided additional Friday and weekend availability for the May 2022 schedule and onward.

61.   It was also determined in the meeting that it would be best for Plaintiff to meet with Burton on site to further discuss and evaluate the PCC2 workspace.

7

62. This meeting occurred on the following day, March 23, 2022. Burton evaluated the workspace and discussed reasonable accommodations with Plaintiff.

63. On or around March 24, 2022, Burton provided the workplace assessment to Defendants, which recommended items be placed in a bin on the lower counter to keep patient information confidential while still within reach from a sedentary location, among other possible accommodations. Using bins to preserve patient confidentiality was exactly what was being done when Huph harassed Plaintiff on March 2, 2022, and aggressively removed the bins from the counter.

64. Plaintiff inquired with Burton on when the accommodations would be implemented, so she could return to working in PCC2 shifts.

65. On or around March 26, 2022, Blum falsely claimed no reasonable accommodations for the PCC2 role were communicated to Defendants by Burton, telling Plaintiff "I'm sorry Upasna, you must be confused. There is no accommodation to be provided to you. You will sit in PCC1," contrary to Burton's workspace evaluation report. Blum denied implementing these reasonable accommodations despite the fact that they did not pose an undue hardship on the operations of the company. Defendants continued to restrict Plaintiff to only working the PCC1 position, effectively reducing her opportunities to work, pick up shifts, and make a living.

66. That evening, Plaintiff had a call with Vandeberg, confirming that Defendants were, in fact, denying implementing the reasonable accommodations recommended by Burton.

67. On or around March 29, 2022, Curtis scheduled a meeting with Plaintiff, Vandeberg, and Fink. The purpose of this meeting was to write Plaintiff up and issue her a corrective action for allegedly raising her voice and "yelling" during the interaction with Huph on

8

March 2, 2022, despite numerous written witness accounts expressing the opposite – that Huph was the one expressing frustration with Plaintiff due to her disability.

68.    In fact, following March 2, 2022 incident, Plaintiff apologized to dispensary staff for the altercation and was told by staff Plaintiff was the person she should be apologizing to.

69.    Defendants' investigation report of the incident had still not been made available almost a month following the incident. Instead, Defendants presented Plaintiff with a corrective action document.

70.    The investigation results were never provided, despite pursuit of them by the Union.

71.    On or around April 1, 2022, Vandeberg filed two grievances on behalf Plaintiff: a request that the corrective action issued to Plaintiff be reduced to a coaching as she had never before been reprimanded and a request that Defendant rectify their refusal to provide reasonable accommodation to Plaintiff encompassing Article 23 – No Discrimination of the CBA.

72.    Plaintiff timely filed a Charge of Discrimination with the Minnesota Department of Human Rights (MDHR) reporting her unlawful treatment.

73.    On or around February 27, 2022, Defendants responded to the grievances by continued placement of Plaintiff in the PCC1 role, which still did not accommodate her disability – and stating they completed an investigation into the March 2, 2022, incident. However, an investigation report was still not provided to Plaintiff or her union representative. Plaintiff continued to lose work hours and the opportunity to pick up and swap shifts with her peers.

74.    On or around May 3, 2022, despite being available and willing to work, Plaintiff was denied the opportunity to pick up a shift because it was a PCC2 shift—which she was no longer allowed to work due to Defendants' unwillingness to provide a reasonable accommodation for that role.

9

75.     On or around May 5, 2022, Vandeberg initiated step three of the grievance process and scheduled a call to further discuss the issues with CEO Amber Shimpa ("Shimpa"), Curtis, and Plaintiff.

76.     In this meeting Vandeberg defended Plaintiff's actions on March 2, 2022, explaining that she was simply reacting to Huph, who had been minimizing and harassing Plaintiff due to her disability. Vandeberg went on to explain that despite Defendants' false claims she had been coached for behavior prior, there were no recorded dates, times, or documentation to back up Defendants' claim (to date, none was ever provided.) Vandeberg again requested the discipline be reduced to a coaching.

77.     Vandeberg told Defendants that changing Plaintiff's previously accessible job role in PCC2 to an inaccessible job role was problematic. Vandeberg went on to explain to Shimpa that Defendants' refusal to implement the accommodation recommendations from Burton were impacting not only Plaintiff's ability to work and pick up shifts, but also other employees' ability to trade shifts with Plaintiff—advocating that implementing the changes would help all PCCs.

78.     At the end of the conversation, Plaintiff asked Shimpa why the reasonable accommodations Burton had recommended could not be implemented so her hours weren't limited based on her disability. Shimpa told Plaintiff she believed the PCC1 station provided the accommodations needed so changing how the other position worked was not something Defendants had contemplated.

79.     On or around June 15, 2022, Christine Dallaire ("Dallaire"), the Dispensary Manager for the Minneapolis location, sent an email notifying the team of an open part-time position for weekends in Minneapolis. In response, Plaintiff again expressed her desire to work full-time hours, discussed scheduling, and offered her flexibility. This request was ignored.

10

80.     In March of 2023, Plaintiff spoke with Security Guard Santino Reynolds ("Reynolds"). Reynolds told Plaintiff he had spoken with Curtis following the March 2, 2022, incident with Huph.

81.     Reynolds told Curtis the situation that occurred was discriminatory in nature and inappropriate. He also told Curtis that Huph was the one who was loud during the confrontation— and that Plaintiff spoke calmly. Reynolds had submitted a written statement following the incident as well.

82.     Upon information and belief, Reynolds allegedly experienced retaliation from management for these statements. On or around March 29, 2023, Reynolds emailed HR and Regional Director of Security Joe Knip ("Knip") that he and other employees were experiencing retaliatory behavior from management for openly and honestly describing how Huph discriminated against and inappropriately handled the situation with Plaintiff on March 2, 2022.

83.     On or around September 6, 2023, due to a new part-time PCC hire quitting in Minneapolis, Dallaire sent an email looking for coverage to fill shifts caused by the opening. Per the union contract, Defendants are required to schedule in priority order full-time employees, and then part-time employees based on seniority. Plaintiff had the highest level of seniority amongst part-time employees and had expressed the availability to work.

84.     Plaintiff discovered that less senior PCCs were consistently being scheduled to work shifts for which she was available.

85.     This was not only a violation of the CBA, but in direct retaliation against Plaintiff, reducing her hours due to her disability and reports of discrimination, her requests to be reasonably accommodated, and her Charge of Discrimination filed with the Minnesota Department of Human Rights.

11

86.     On September 18, 2023, Plaintiff informed Huph she had discovered Defendants were consistently scheduling less senior PCCs hours for which she was available and informed her she would be filing two grievances.

87.     After performing an audit for the years 2022 and 2023, Plaintiff determined that over a period of almost two years, there were 40+ shifts in which a less senior PCC was consistently scheduled instead of Plaintiff, even though she was available to work those days.

88.     These shifts equated to approximately 344 hours in lost wages for Plaintiff.

89.     Plaintiff filed two grievances through the union based on Article 14, Section 1 – Hours of Work and Article 23 – No Discrimination of the CBA. These grievances were never resolved.

90.     On or around September 20, 2023, Plaintiff slipped on a rolling dolly, fell, and was injured.

91.     Plaintiff filed a claim for workers' compensation benefits in connection with her work injury.

92.     Plaintiff regularly provided Defendant with doctor's notes regarding her medical leave as necessary per Defendants' required medical leave process.

93.     The collective bargaining agreement with Defendant states that if employees provide certification that they are unable to work after 1 year they remain employees for a period of 2 additional years (e.g. 3 total).

94.     On or around July 25, 2024, Plaintiff provided Defendants notice from her treating physician that she had ongoing symptoms and was unable to work.

95.     That physician's note stated that Plaintiff's symptoms would be reevaluated on or around October 25, 2024.

12

96.    Despite the terms of the collective bargaining agreement, on or around September 7, 2024, Plaintiff's employment with Defendants was terminated.

97.    The Equal Employment Opportunity Commission mailed Plaintiff a right-to-sue notice for her Charge of Discrimination on or around December 23, 2024.

98.    Plaintiff timely commenced this action.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

99.    Defendants, by and through their managers and officials acting on behalf of Defendants and within the scope of their employment, engaged in unlawful discrimination in employment against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. These practices include, but are not limited to, taking adverse or otherwise negative employment action against Plaintiff because of a disability, record of disability, or perceived disability.

100.    Plaintiff suffered discrimination based on disability including, but not necessarily limited to, limiting her available work hours and the termination of her employment.

101.    Defendants, by and through managers and officials acting on behalf of Defendants and within the scope of their employment, engaged in unlawful discrimination in employment against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. These practices include, but are not limited to, discriminating against Plaintiff in her work hours, and the termination of her employment.

102.    The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her employment status because of her disability.

13

103.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

104.     Defendants, by and through its owners, employees, managers, and officials acting on its behalf, and within the scope of their employment or authority, engaged in unlawful employment practices in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.* These practices include, but are not limited to, taking adverse or otherwise negative employment action against Plaintiff because of a disability, record of disability, or perceived disability.

105.     Plaintiff suffered discrimination based on disability including, but not necessarily limited to, limiting her available work hours and the termination of her employment.

106.     Defendants, by and through managers and officials acting on behalf of Defendants and within the scope of their employment, engaged in unlawful discrimination in employment against Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.* These practices include, but are not limited to, discriminating against Plaintiff in her work hours, and the termination of her employment.

107.     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her employment status because of her disability.

14

108.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

## COUNT III
## FAILURE TO ACCOMMODATE IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

109.    Defendants, by and through managers and officials acting on behalf of Defendants and within the scope of their employment, engaged in unlawful discrimination in employment against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* These practices include, but are not limited to, failing to provide Plaintiff with reasonable accommodation for her disability.

110.    Defendants unlawfully failed to provide Plaintiff with reasonable accommodations for her disability.

111.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer from emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

## COUNT IV
## FAILURE TO ACCOMMODATE IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

112.    Defendants, by and through managers and officials acting on behalf of Defendants and within the scope of their employment, engaged in unlawful discrimination in employment against Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. 363A.01 *et seq.* These practices include, but are not limited to, failing to provide Plaintiff with reasonable accommodation for her disability.

15

113.    Defendants unlawfully failed to provide Plaintiff with reasonable accommodations for her disability.

114.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer from emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

**COUNT V**
**RETALIATION IN VIOLATION OF THE**
**AMERICANS WITH DISABILITIES ACT**

Plaintiff re-alleges all preceding paragraphs of this Complaint.

115.    Defendants, by and through its managers and officials acting on behalf of Defendants, and within the scope of their employment or authority, engaged in unlawful employment practices involving Plaintiff in violation of the Americans with Disabilities Act 42 U.S.C. § 12111 *et seq.*

116.    These practices include, but are not limited to, discriminating against Plaintiff in her work hours, failing to provide her with accommodation, and the termination of her employment.

117.    The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her employment status because of her disability.

118.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

**COUNT VI**
**REPRISAL IN VIOLATION OF**
**THE MINNESOTA HUMAN RIGHTS ACT**

Plaintiff re-alleges all preceding paragraphs of this Complaint.

16

119. Defendants, by and through managers and officials acting on behalf of Defendants, and within the scope of their employment or authority, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.*

120. These practices include, but are not limited to, discriminating against Plaintiff in her work hours, failing to provide her with accommodation, and the termination of her employment.

121. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her employment status because of her disability.

122. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

## COUNT VII
### RETALIATION IN VIOLATION OF
### THE MINNESOTA WORKERS' COMPENSATION ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

123. Defendants, by and through its managers and officials acting on behalf of Defendants and within the scope of their employment or authority, engaged in unlawful employment practices in violation of the Minnesota Workers' Compensation Act, Minnesota Statutes § 176.82 *et seq.* These practices include, but are not limited to, discharging Plaintiff for seeking workers' compensation benefits or in any manner intentionally obstructing Plaintiff from seeking workers' compensation benefits.

124. Defendants failed to take all reasonable steps to prevent these unlawful practices based upon Plaintiff's workplace injury from occurring.

125. The effect of the practices complained of above has been to deprive Plaintiff of

17

equal employment opportunities and otherwise adversely affecting Plaintiff's employment status because of Plaintiff's workplace injury.

126.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer from emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

## PRAYER FOR RELIEF

Therefore, Plaintiff requests that judgment be entered against Defendants for the following:

a.    Declaring that Defendants' acts or omissions described in this Complaint constitute violations of applicable federal and state laws which protect Plaintiff;

b.    Enjoining Defendants and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, from its unlawful acts;

c.    Requiring Defendants to make Plaintiff whole for its adverse, retaliatory, and discriminatory actions with compensatory damages and with interest of an appropriate inflation factor;

d.    Awarding Plaintiff attorneys' fees, costs, and disbursements pursuant to statute; and

e.    Granting other and further relief as the Court deems fair and equitable.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.

18

Dated: March 21, 2025

/s/ Daniel Gray Leland

Daniel Gray Leland (MN # 0389027)
Ryan T. Conners (MN # 395313)
LELAND CONNERS PLC
60 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 255-2255
dan@lelandconners.com
ryan@lelandconners.com

*Attorneys for Plaintiff*

**ACKNOWLEDGMENT**

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: March 21, 2025

/s/ Daniel Gray Leland

Daniel Gray Leland

19